May it please the Court, Kieran Ringenberg of Boy Schiller & Flexner for Ron Mosley. Mr. Mosley has been in prison for 25 years. It was his first defense. The day after the crime, he turned himself in. We showed in our opening brief a detailed factual showing of why the evidence in Mr. Mosley's case is more favorable for parole than many cases in which the state and federal courts have ordered the writ and ordered the release of other inmates. The governor relied principally on the commitment offense, and after the California Supreme Court's decision in Lawrence and this Court's decision in Cook v. Solis, it is abundantly clear that that is insufficient as a matter of law to continue to restrain someone 20 years after the fact. What do we do about that if you're right? The right remedy in this case, Your Honor, is to remand, reverse and remand with instructions to grant the writ and release Mr. Mosley. In this Court's decision in Pearson v. Muntz, the Court held that in a governor reversal case, release is an appropriate remedy, and the language of the Court's decision suggests it's the only permissible remedy because what it said is if the district court is right that the governor's reversal was improper as a matter of law, the inmate should have been free during the entire pendency of the case. Well, in other words, technically, in your view, we should instruct the district court to instruct that the parole board decision be reinstated? Correct. That's correct, Your Honor. And the parole board set a release date, which has since passed. So accordingly, there's nothing left to do except to ---- Does that square with what the California Supreme Court has said in Prather and with what we said in Haggard? I believe so for the following reasons, Your Honor. The California Supreme Court's decision in Prather distinguishes Lawrence, the California Supreme Court case, on the grounds that Lawrence was a governor reversal case. So that's step one. So Haggard, of course, is a board reversal case, not a governor reversal case. So it cannot bind. But Haggard seems to say that the liberty interest that is the linchpin of this whole thing isn't an interest in release. I concur with that, Your Honor. That is true. However, the board held a hearing. The board concluded that the evidence required Mr. Mosley's release at a certain point in time. When was that hearing? 2004, Your Honor. There's been no hearing since that date by the board? There have been subsequent parole hearings. Do we have a record of those hearings? There is no record. In this case, those hearings are not in the record in this case. So how do we know that in the last six years he's been in prison, there hasn't been something that might indicate he is a danger if released now? There's no evidence in the record that that is the case. Yes. And because what the parole board determined was that he's entitled to release at that time, absent evidence that he is dangerous in the record, I respectfully submit to the Court the right answer is for him to be released. But that's not a question for us in the first instance, is it? I believe it is, Your Honor. Well, I should say there's two alternatives. The Court could instruct what the appropriate remedy is, and I think the Court ought to because Mr. Mosley should have been free the last five years. Alternatively, the Court could remand to the district court to exercise its discretion, which is broad, in determining the appropriate remedy. I should add that in the Well, that way the district court will find out whether the subsequent hearings, something had happened while he was in prison, that might warrant remand to the parole board as opposed to direct release. Presumably, if they continue to recommend his release, then his record would be the same as it was in 2004. It is conceivable that I believe that's a reasonable approach, and I could see that. I do believe that That's because I'm a district judge. It's not clear to me that expanding the record to consider subsequent parole hearings is appropriate. I will tell you, there is no new evidence on which the board has ever relied to conclude Mr. Mosley is dangerous in subsequent proceedings. It doesn't exist. I mean, what has been the sequence of hearings? I know it's not in the record, but it would just be helpful to know. My at the risk of testing my memory, Your Honor, there were additional parole hearings in 2007, 2008. There's also been a subsequent proposition which reduces the frequency with which parole hearings are held. Okay. It doesn't really matter, but thank you. Thank you. The point I wanted to start with was that we made this factual showing about what the evidence is and why Mr. Mosley's evidence compares favorably with other cases like Lawrence in which release was ordered. In opposition, the State does not argue the facts. There is no argument in the State's brief about what the evidence is or why the evidence supports continued confinement. I respectfully submit the reason that is is because there's no evidence to be made. Instead, the State has a number of legal arguments about whether California court precedence clearly establishes the governing rule. Well, previous panels of this court have already rejected that argument a number of times. That's settled in the circuit. Accordingly, what you're left with is a Ninth Circuit is a brief by the State that makes a number of arguments that the court is not empowered to accept because previous panels have already rejected them. And I submit that that alone is a basis to reverse the district court in order that the writ be granted. I do want to make two additional quick points about what the governor said. The governor relied solely or principally on the commitment offense. But the governor's analysis of the commitment offense was solely limited to the question of whether it was especially heinous. In Cook v. Solis, what this court held is that it doesn't matter what the offense is. Additional evidence is required to conclude that that offense proves dangerousness 11 years later in that case. In this case, the offense is 20 years later. And given the intervening rehabilitation, which the governor recognized from Mr. Mosley, his reconciliation with his family, his development of an educational background and trainable job skills, his extensive programming on substance abuse and anger management, his evaluations by mental health professionals, which the governor credited, these are all facts the governor found. There's something else I meant to ask you sort of on that point. All of this slew of cases, starting back with Lawrence, postdates both the board's review and the governor's reversal. Correct. Should that matter? I don't believe so. The Supreme Court's decision in Lawrence, it says that it's not a change in the law, that they're just applying the same legal principles. There are a number of decisions pre-Lawrence which make the same point. I will concede that the California courts had developed a little more aggressiveness in reversing the governor's opinions. But that's not a change that should be relevant. I should say, the Constitution, there's no question that the relevant legal principle, that is, some evidence is required and it has to prove him currently dangerous, that's been true for 20 years. And there's no, there's nothing that's changed. Lawrence did, if it didn't change, it certainly made it a lot clearer that relying on the offensive conviction itself is not inherently a sign of current dangerousness. I concur with the court that some judges in California's state system probably understood that better after Lawrence than before. But I don't think the constitutional question is one iota different. The constitutional question is whether there is evidence that Mr. Mosley poses an unreasonable risk of danger. That was true the day of his parole hearing. It was true the day the governor reversed that parole hearing, and it continues to be true today. And with the Court's indulgence, I'll save the rest of my time. Surely.  Ms. Hooley. Good morning, Your Honors. May it please the Court, Deputy Attorney General Pamela B. Hooley, on behalf of the Appellee Warden. And the district court here should be affirmed because the district court's ultimate conclusion, whether the state court unreasonably applied clearly established federal law, was correct. The state court, excuse me, did not unreasonably apply clearly established federal law. How can that be so in light of, you know, Haggard and all of its little kids? Little kids, that's good. It can be so because the inquiry for this Court, as it was for the district court, is what was the law at the time of the decision being rendered. Well, but you never made that argument. I mean, that may be so, but, I mean, the State has never argued that. The State actually did argue in the brief that the standard under AEDPA is what is the law at the time. And the district court actually said that as well. The district court said that. And you can certainly affirm on anything that's already in the record. And the district court, looking at this case, which was decided by the superior court in 2005 under Dannenberg, found that the crime alone was enough, but also that the Governor relied on additional evidence, including institutional misconduct, that made that crime probative currently. And he did that even without the benefit of Lawrence, given it was an older decision. For this Court to suggest that the State court unreasonably applied its own law that Mr. Riengaard said was not changed. Isn't the argument that it's an unreasonable determination of the facts in that there was not some evidence? The underlying facts are not disputed. The question is what's the probative value. And under AEDPA, this Court has held in other cases that the sum evidence test is actually an application of law to facts that's reviewed under D-1. And so then that gets back to is it an unreasonable application of clearly established law. And even if this Court is looking back through AEDPA's dual layers of deference to a deferential standard of review, it has to be so unreasonable to be overturned, not just that this Court would review the and read the evidence differently. And that's what Mr. Mosley is asking this Court to do. When the district court looked at this case, it gave that appropriate deference to the State court. It found that what was cited in the record was sufficient to uphold that decision. And Renico v. Lett, after this case was decided, teaches that what's important is what was clearly established by the Supreme Court. And as we argued consistently, Greenholz is the standard, and he got Greenholz. And even under Hayward, which was the en banc standard, Hayward only conducted a very limited review. In Hayward, the en banc court didn't go through the record in the manner Mr. Mosley requests that this Court do. It made a check to see if the constitutional protection was adequate. It found the sum evidence test that the State applies was an appropriate level of review to protect due process, and that it was found in the case. And in this case, the Superior Court reviewed for some evidence and found there was. So with that... One doesn't have to conduct very much of a search and review in order to believe that this case is almost squarely the Lawrence case. It's different, Your Honor, because this individual didn't have the clean record in prison that Ms. Lawrence had. Well, it's pretty clean. It's pretty clean. I mean, he had, what, five silly infractions and nine pretty superficial counseling reports, all more than ten years ago. Now more than 15, but more than ten years ago at the time the Governor... Well, with the exception of one that was in the year of the hearing, Your Honor, there was a counseling chronicle in 2004 related to not showing up for work, and the Governor, as the reviewer with the deference, is the one who gets to decide the weight of those. Now, in this case, even under Hill, which was what was argued in all these briefs because Mr. Mosley was relying on prior precedent of this Court that held the sum evidence test was clearly established, even under that test, the State court's decision and the Governor's decision has to survive because it's such a low requirement. There need only be a modicum. And even in Lawrence, Lawrence at the end of the opinion says there are some cases where the crime alone is sufficient. In this case, we have the crime. We have the institutional misconduct. We also have the past history of substance abuse. And that combination of factors is sufficient to survive under the dual deference required by AEDPA and the Supreme Court cases interpreting it. And on... Can I ask you a question? It may be a little bit off base, but we're talking about alleged misconduct in prison, and here the people who are presumably the experts, the parole board, have determined that it really was not sufficient to warrant denial of parole. And I'm having a little trouble where the Governor comes in, and he says, well, I know better than the parole board how to evaluate this. Yes, Your Honor, that is actually the standard that California has set up. So we're going into what is an appropriate application of California law. In this state, the people gave the Governor the last word on parole decisions, and that review is independent and de novo. They passed a constitutional amendment giving him the final say, but we're still, it's not an absolute discretion. We're still under a liberty interest here, and we have to evaluate the facts, the application of the principle to the facts. And I have a lot of trouble saying how the Governor can read this whole record and then come to the conclusion that these minor infractions somehow make him a risk. Otherwise, the Governor isn't bound by the board's decision. He has the authority to weigh the evidence differently, and that's where the distinction comes. Yes, but not irrationally. Respectfully, it's not irrational to rely on a crime and institutional misconduct stab someone multiple times for $60. And it's the Governor's call in 2005 to decide that. And before I forget, I do want to touch on the remedy issue. The remedial aspect of this case, it would not be appropriate to grant immediate release under Haggard. What Haggard recognized that the state courts did in Prather was find that it's the executive's decision, and Prather recognized that a remand to the executive is what's appropriate, especially because the passage time things can change. And while it's not in the record, it's true that he has had subsequent hearings where the board has found him unsuitable. And that's why you can't just look at the case now and say that it should just lead to release. The whole purpose of parole review is to look at current unsuitability. So a remand to the Governor would respect the state's role and the executive's role in the parole decision. If you remand to the Governor, what does the Governor have to review? Well, there's actually a recent case, since we're having a Federal court look at California law, that held in Ross in the Third District Court. I'm sorry, in what? The case is In re Ross out of the Third District Court of Appeal. And that was a case where the Third District Court of Appeal looked at a Governor's decision, noted that it had some disagreements with how the Governor had decided the case because it was a pre-Lawrence gubernatorial decision. The Court remanded the matter. Mr. Ross, when the Governor then denied, brought a new writ, arguing that the Governor had exceeded the bounds of his authority by relying on new evidence of what had happened in the interim, the Court of Appeal said no, the appropriate remedy was to let the Governor look at everything that presently existed, because the Governor's duty is to find out whether someone is currently dangerous before releasing him. And so it was appropriate for the Governor to look at anything. That can cut the other way. There can be very good evidence for the inmate. And if the inmate has more evidence that shows he's suitable, the Governor certainly can't ignore a judicial finding, but he has to have the opportunity to exercise that discretion. We don't have in our record, however, whatever it is that you say the Governor has looked at in this case. The Governor hasn't reviewed it since. The Board has. All right. I could have that judicially noticed since it's actions by the Board if the Court would like. I can certainly submit that, but I don't think the Court needs that to get to the right result here. So if we disagree with your premise, and it has to be, we have to vacate the district court's decision, what is it we tell the district court to do? The district court should remand to the State to let the State decide in the first instance. Which part of the State, the Board or the Governor? Because it's a Governor's decision, it should go to the Governor. But the Governor has not had before him, has it? Any decision by the Board since 2004? Nobody can look at what they've done most recently, which was in 2009, September 17th, 2009. He can look at that record and evaluate it with the Court's findings in mind. I was just checking whether my next question was proper. Obviously, the two of you know what's happened since. What happened in the next two hearings? It would help me figure. I know he was denied for three years. I don't have the reasoning in front of me. I just checked because I know courts always want to know what happened with the inmate. I'm not as familiar with Mr. Mosley's case as some others because, as the Court may have noticed from the record, I substituted in rather late. So I looked because I anticipated you would ask, but I don't know the basis for that decision. But your position is, just following up one more time on Judge Alarcon's point in mind before, if we were to believe it should go back, if, then your position is it should go to the Governor and that the Governor would, in fact, have before him or have to look at current parole board decisions, whatever they may be. Yes. Because the Governor's determination is one of current, present, right now, dangerousness. Under the state case law and the state statute and the state constitution, yes. All right. Thank you very much. Thank you. Did you have anything else? Thank you. Did you have anything else? Okay. With regard to the merits, I would like to point the Court to the recent panel decision in Cook v. Solis in which the Court applied at pedeference and concluded that a materially indistinguishable facts required release. The offense was a premeditated attempted murder that had happened 11 years before. The Court said that was not relevant. There were a handful of nonviolent disciplinary infractions. Early in the inmate's confinement, the Court held that those were not sufficient. The Court's analysis said, quote, especially as he, Cook, had been discipline-free for nearly a decade. In this Court, in this case, pardon me, the Governor found that Mr. Mosley had been discipline-free for more than a decade. His facts are superior to Mr. Cook's, and it would be unjust for there to be a different outcome on facts that are more supportive of parole. Okay. If we agreed with that, then what is your position on the State's position that the remand should be to the Governor? Your Honor, I believe, going back to the Court's analysis in Munter, which is that – which is this. If the writ is properly granted and the Governor's decision was unconstitutional and without basis in evidence, the inmate should have been free five years ago. That's what the Court said in that case. And it's just as true in this case. So remand to the Governor to reconsider the same evidence? Well, I think the State is saying it wouldn't be reconsidering the same evidence because the pool now would consist of recent, whatever they are. Correct. I understand the point, but, Your Honor, is if the Constitution had been followed in this case, that never would have happened because Mr. Mosley would have been free. Was this issue actually raised in the case you're talking about? The issue in Munter is a question about what the appropriate remedy is. Yes. And it came up on a stay. The district court had ordered release. The State asked for a stay of that pending appeal, and then a panel of the Ninth Circuit said no, you can't have a stay. Well, but it's not the same. I concur, but the analysis is on point. I would suggest to the Court. I agree it doesn't bind the Court, also because we have intervening prior decision which raises a new question. But I think the analysis is binding. The last point I would like to make is the remedy issues are not addressed in the briefs. If the Court is uncertain and thinks it would be helpful, I would certainly be more than happy to submit additional briefing on that question. Thank you very much, both of you, for your argument. Thank you. The matter just argued will be submitted.
judges: Trager, Alarcon, Rymer